**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SCHENKER, INC.,

                      Plaintiff,

      -against-

ARNOFF MOVING & STORAGE, INC.,

                      Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 17-2967 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Schenker, Inc. ("Plaintiff") commenced the instant action against Defendant Arnoff Moving & Storage, Inc. ("Defendant" or "Arnoff") seeking damages for losses sustained when cargo which the Defendant was carrying on behalf of Plaintiff's clients – a transaction brokered by Plaintiff – was damaged in transit. *See generally* Plaintiff's Complaint ("Compl.") [DE 1-1]. Plaintiff asserts claims under the "Carmack Amendment" to the Interstate Commerce Act, 49 U.S.C. § 14706 (Count I) and under New York common law for breach of contract (Counts II-VI). Defendant has filed a motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 7-4]. Judge Feuerstein referred Defendant's motion to this Court for a recommendation as to whether the motion should be granted. For the reasons which follow, the Court respectfully recommends to Judge Feuerstein that Defendant's motion be DENIED, without prejudice.

## II. BACKGROUND

### A. Facts Alleged in Plaintiff's Complaint[1]

The following factual allegations have been taken from Plaintiff's Complaint. All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Plaintiff is a "full-service international logistics company" which provides "an array of integrated transportation and logistics solutions for the movement of goods and supply chains." Compl. ¶ 1. Defendant is an interstate motor carrier. *Id.* ¶ 4. Plaintiff and Defendant negotiated a "Contract for Motor Transportation Services" (the "Contract") which was executed in July of 2014, whereby Defendant "would transport by motor vehicle as a contract carrier in inter- and intra-state commerce and provide related transportation and logistics services as specified by [Plaintiff]." *Id.* ¶¶ 24-25.[2] On or before December 18, 2015, Global Foundries U.S., Inc. ("Global Foundries"), a non-party to the instant action, engaged Plaintiff to coordinate the transportation of one truckload of five crates of electronics from California to New York. *Id.* ¶ 11. Pursuant to Arnoff's contract with Plaintiff, and "[i]n consideration of certain freight charges paid or agreed to be paid to [Arnoff], [Arnoff] agreed to transport said Cargo to destination in good order and condition." *Id.* ¶ 12. On or about December 18, 2015, this cargo

---

[1] The Court notes that paragraph 28 of Plaintiff's Complaint is followed by a second paragraph 24, from which point on the paragraphs are numbered consecutively through paragraph number 57.

[2] The Complaint references the "Contract for Motor Transportation Services" and quotes the contract extensively. Defendant's moving papers include a copy of the contract.

2

was tendered to Defendant and/or Defendant's subcontractor and/or agent, CRST Specialized Transportation, Inc., d/b/a STIdelivers ("CRST"), in good order and condition. *Id.* ¶ 13. According to the Complaint, neither Defendant nor Defendant's subcontractor and/or agent made any notation of damage on the bill of lading at the time of loading in California. *Id.* ¶ 14.[3]

On or about December 21, 2015, the cargo was extensively damaged during transport. Compl. ¶ 16. As a result, Plaintiff's customer, Global Foundries, incurred a total loss in the amount of $213,949.05, which included: (1) $192,229.05 to repair the damaged cargo; (2) $8,795.00 to ship the damaged cargo from New York to California for repairs; and (3) $12,925.00 to ship the repaired cargo from California to New York. *Id.* ¶ 18. Plaintiff states it paid, or may be liable to pay, Global Foundries the full amount of $213,949.05 for the repairs and subsequent shipments of the damaged cargo. *Id.* ¶ 19. Plaintiff claims that, pursuant to the contract, it performed all valid conditions precedent. *Id.* ¶ 21.

Plaintiff commenced the instant action to recover damages in the amount of $213,949.05, contending that Defendant is liable to Plaintiff: (1) under the "Carmack Amendment" to the Interstate Commerce Act, 49 U.S.C. § 14706 (Count I), *see* Compl. ¶¶ 9-22; or, in the alternative, under the terms of the contract; (2) for breach of one or more of the contract's indemnification provisions (Count II), *see id.* ¶¶ 23-37; (3) for breach of one or more of the contract's provisions regarding shipping and routing guidelines (Count III), *see id.* ¶¶ 38-43; (4) for breach of one or more of the contract's provisions requiring prior authorization before engaging a subcontractor (Count IV), *see id.* ¶¶ 44-51; for breach of one or more of the

---

[3] The relevant bill of lading is attached as Exhibit 1 to Plaintiff's Complaint. *See* DE 1-1. However, a more legible copy of the bill of lading is attached to Plaintiff's Declaration in Opposition to the Motion to Dismiss. *See* DE 12-1.

contract's provisions regarding insurance requirements (Count V), *see id.* ¶¶ 52-55; and (6) for attorneys' fees and costs (Count VI). *See id.* ¶¶ 56-58.

### B.  Relevant Procedural History

Plaintiff commenced this action in New York State Supreme Court for the County of Nassau on or about April 13, 2017. *See* DE 1-1. Defendant filed a Notice of Removal on or about May 15, 2017, asserting that Plaintiff's claim under the Carmack Amendment, 49 U.S.C. § 14706, vests this Court with jurisdiction pursuant to 28 U.S.C. §§ 1131 and 1337. *See* DE 1. Defendant filed its motion to dismiss Plaintiff's Complaint [4] on or about June 16, 2017. [5] *See* DE 7-4. On August 4, 2017, Judge Feuerstein referred Defendant's motion to dismiss to the undersigned for a report and recommendation as to whether the motion should be granted. *See* August 4, 2017 Electronic Order.

### C.  The Parties' Positions

Defendant moves to dismiss Plaintiff's state law claims on the grounds that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, preempts each of Plaintiff's claims arising under New York law. *See generally* Defendant's Memorandum in Support of its Motion to Dismiss ("Def.'s Mem.") [DE 7-5 / DE 8-2 / DE 14-1]. According to the Defendant,

---

[4]  The docket as it relates to Defendant's motion to dismiss contains duplicates of some documents, and only portions of others; relevant papers are scattered between docket entries 7-4 and 14-4. The Court has identified the relevant moving papers as having the following docket entry designations: Notice of Motion to Dismiss [DE 7-4 / DE 14]; Declaration in Support of Defendant's Motion to Dismiss [DE 7-2 / DE 8-1 / DE 14]; Memorandum in Support of Defendant's Motion to Dismiss [DE 7-5 / DE 8-2 / DE 14-1]; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [DE 11]; Declaration in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [DE 12]; Defendant's Reply Memorandum in Further Support of its Motion to Dismiss [DE 9 / DE 14-4].

[5]  Since there are multiple docket entries spanning multiple dates related to Plaintiff's motion, the Court will assume that June 16, 2017, the earliest date associated with a docket entry for Plaintiff's motion, is the motion's filing date.

the law in the Second Circuit as to preemption in these circumstances is unequivocally clear. *See id.* at 4 (citing *North America Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir. 1978); *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 379 (2d Cir. 1994)).[6]

In opposing Defendant's motion,[7] Plaintiff first argues that it must plead both its Carmack claim and New York state law claims based on "recent case law in various circuits unequivocally holding that [Plaintiff], as a broker, does not have a direct cause of action against [Defendant], as a carrier, under Carmack." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n.") [DE 11] at 5. Simultaneously, Plaintiff asks this Court to make a determination that its claims do not arise under the Carmack Amendment. Plaintiff states that in order for Defendant's liability to be governed by the Carmack Amendment, "a broker such as [Plaintiff] must be a person 'entitled to recover' under the trucking receipt or bill of lading." *Id.* at 7. Because "the only receipt or bill of lading presented to the Court" in this action "is the bill of lading from [Defendant's] subcontractor, STIdelivers," Plaintiff contends that "its claims do not arise under the Carmack Amendment, and therefore, are

---

[6] Defendant also argues that Plaintiff's "Summons with Notice is a mere statement of the claims without any supporting facts. . . . On its face the Summons with Notice must be dismissed as it does not state a cause of action and there are no viable claims that plaintiff can make under New York State Law." Def.'s Mem. at 6. Defendant's argument is unavailing. Defendant's own removal documents show that Defendant attached, as Exhibit 1 to the Notice of Removal, a 58-paragraph Complaint filed by Plaintiff in the state court which sets forth six causes of action. *See* DE 1, Ex.1; s*ee also* Pl.'s Opp'n. [DE 11] at 18 ("Foremost, [Defendant] is confused; [Plaintiff] served a Complaint not a Summons with Notice (and the Complaint was attached to [Defendant's] Notice of Removal).").

[7] Plaintiff asserts that "[a]lthough [Defendant] purportedly moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it has already filed its Answer . . . and, therefore, Rule 12(b) is inapplicable." *See* Pl.'s Opp'n. at 3. According to Plaintiff, the motion must instead be deemed a motion for judgment on the pleadings, pursuant to Rule 12(c). *Id.* For the reasons stated by Plaintiff, the Court treats this motion as a Rule 12(c) motion for judgment on the pleadings.

5

not preempted by the Carmack Amendment." *Id.* at 10.  Plaintiff cites several decisions from beyond the Second Circuit to support its proposition, but concedes that the case law is not clearly developed on this point and that it has not located any authority on the specific issue in the Second Circuit. *Id.* at 7-9.

Additionally, Plaintiff argues that even if the Carmack Amendment does govern Defendant's liability, it does not preempt all of Plaintiff's breach of contract claims.  Relying on case law from other circuits, Plaintiff maintains that its breach of contract claims for Defendant's impermissible subcontracting, failure to procure insurance for Plaintiff's benefit, and attorneys' fees are "separate and distinct" from damage to the cargo. *See* Pl.'s Opp.'n at 16.  "These three causes of action seek different remedies than the compensatory damages for cargo damage and are actionable without the cargo damage on the basis of the Contract for Motor Transportation Services between [Plaintiff] and [Defendant]." *Id.*  As such, Plaintiff contends they are not preempted by the Carmack Amendment. *See id.* at 13-17.

In its reply memorandum, Defendant argues that Plaintiff is an assignee of its customer shipper's rights, and therefore can maintain a Carmack Amendment claim even though it is a "broker." *See* Defendant's Reply Memorandum ("Def.'s Reply") [DE 9 / DE 14-4] at 2.  In support, Defendant argues that "[t]he definition of 'transportation' under the Carmack Amendment is broad and includes arranging for transportation of property, receiving property, storing property, delivering property and resolving disputes via the claims process." *Id.* at 3 (citations omitted).  Because of this, "only extra-contractual, separate and distinct conduct falls outside the preemptive scope of the Carmack Amendment." *Id*.  No such conduct exists in the instant action Defendant argues, and, more as such, each of Plaintiff's breach of contract claims

6

is preempted. *Id.* at 3-6. Lastly, Defendant argues that Plaintiff cannot recover attorneys' fees under the Carmack Amendment. *Id.* at 6.

### III. STANDARD OF REVIEW

A motion to dismiss for "failure to state a claim (or one of the other non-waivable defenses under Rule 12 (h)) that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the District Court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001); *see Lawson v. Broome County,* 3:14-CV-0195, 2016 WL 427898, at *4 (N.D.N.Y. Feb. 3, 2016) (citing *Patel,* 259 F.3d at 126.) Whether the Court construes the instant motion as a motion for judgment on the pleadings pursuant to Rule 12(c) as Plaintiff argues, *see* Pl.'s Mem. at 3, or as a motion to dismiss pursuant to Rule 12(b)(6), the Court applies the same standard of review. *See Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013); *Olivo v. City of New York*, 14-CV-4966, 2015 WL 4645271, at *2 (E.D.N.Y. Aug. 4, 2015); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 12-CV-1956, 2013 WL 4500730, at *3 (E.D.N.Y. Aug. 20, 2013). The Court must liberally construe the Complaint's claims, accept all factual allegations as true, and draw all reasonable inferences in favor of Plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

7

face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555)). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

"In adjudicating a Rule 12(c) motion, the Court examines the 'complaint, the answer, any written documents attached to them,' and any items of which the Court may take judicial notice." *Grecco v. Associated Press,* 16-CV-6240, 2017 WL 2913501, at *1 (S.D.N.Y. July 7, 2017) (quoting *L-7 Designs, Inc. v. Old Navy LLC,* 647 F.3d 419, 422 (2d Cir. 2011)). "A complaint is also deemed to include 'any written instrument attached to it as an exhibit, materials

8

incorporated by reference and documents that, although not incorporated by reference, are 'integral' to the complaint.'" *L-7 Designs,* 647 F.3d at 422 (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## IV. DISCUSSION

### A. Preliminary Issue: Consideration of Supporting Declarations/Exhibits

As an initial matter, the Court points out that both Defendant and Plaintiff have submitted, in addition to memoranda of law, declarations in support of their respective positions and exhibits attached to those declarations which contain supplemental materials. *See* DE 7-2 / DE 8-1 / DE 14A; DE 12. After reviewing the Complaint in conjunction with these materials, the Court finds that the materials encompassed within each Defendant's declaration are either incorporated in the Complaint by reference, or consist of documents whose terms and effect are relied upon heavily in the Complaint and, thus, are rendered "integral" to the Complaint. *See L-7 Designs,* 647 F.3d at 422; *DiFolco v. MSNBC Cable, LLC,* 622 F.3d 104, 111 (2d Cir. 2010); *Chambers*, 282 F.3d at 152-53. As such, the Court exercises its discretion to consider these documents in analyzing the motion to dismiss. *See Grecco,* 2017 WL 2913501, at *2 (on a Rule 12(c) motion, "[a] court may consider a document that is not attached as an Exhibit to a pleading or incorporated by reference into the complaint if the complaint 'relies heavily upon [the document's] terms and effect,' thereby rendering the document "integral" to the complaint.'") (quoting *DiFolco,* 622 F.3d at 111); *Moreno v. Episcopal Disease of Long Island,* CV 14-7231, 2016 WL 8711448, at *6 (E.D.N.Y. Jan 20, 2016) *report and recommendation adopted by* 16-CV-7231, 2014 WL 8711394 (E.D.N.Y. Mar. 4, 2016) (noting that on a Rule 12(c) motion, the Court considers documents rendered "integral" to the complaint).

9

### B.     The Carmack Amendment

The threshold question presented by Defendant's motion, and the question the Court must address before moving to any potential preclusion issue, is whether the Carmack Amendment to the Interstate Commerce Act actually applies to the circumstances alleged in Plaintiff's Complaint.

### *1. Applicable Law*

The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability. *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 381 (5th Cir.1998); *Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 704 (4th Cir.1993)). To that end, the Carmack Amendment established a single uniform regime for shippers to recover directly from carriers in whose care their items are damaged. *Project Hope*, 250 F.3d at 73 n.6 (quotation omitted). The Carmack Amendment provides, in pertinent part, as follows:

> [a] carrier providing transportation . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1). It is firmly established in the Second Circuit that the Carmack Amendment fully occupies the field of carrier liability and thus completely preempts state common law claims by a shipper against a carrier arising from damage to goods in transit. *Guru Kripa Foods, Inc. v. Inter, Inc.*, No. 10-CV-0229, 2012 WL 3306520, at *10 (E.D.N.Y. Aug. 10,

10

2012) ("[T]he Second Circuit has concluded that the statutory scheme provided by the Carmack Amendment is the exclusive remedy whereby a shipper may seek reimbursement from a carrier for damage to his or her property that occurred during shipment.") (quoting *Commercial Union Ins. Co. v. Forward Air, Inc.,* 50 F.Supp.2d 255, 257 (S.D.N.Y.1999)); *Materazzi v. Atlas Van Lines, Inc.*, 180 F. Supp. 2d 408, 410 (E.D.N.Y. 2001) (citing *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233-34 (2d Cir.1978)); *see Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 381 (2d Cir. 1994).

What is less clear, and where courts have differed, is to what extent the Carmack Amendment governs the liability of a carrier as to a non-shipper broker – that is, whether and when a broker, as opposed to a shipper, has a direct cause of action under the Carmack Amendment against a carrier.[8] *See Nat'l Bankers Tr. Corp. v. Peak Logistics, LLC*, No. 12-2268, 2014 WL 5343639, at *3 (W.D. Tenn. Oct. 20, 2014) ("[F]ederal courts have labored over the issue of whether *brokers'* claims against carriers are likewise preempted."). The Second Circuit has stated that "[s]uits under the Carmack Amendment may be brought against a carrier by any person entitled to recover in the carrier's 'bill of lading,' including the buyer who was to receive the goods."[9] *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2d Cir. 1999) (citing 49 U.S.C. §§ 14706(a)(1), 14706(d); *DiPaolo Machine Works, Ltd. v. Prestige Equip. Corp.,* 998

---

[8] A broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102.

[9] In a recent decision, a district court for the Eastern District of California stated in reference to the Second Circuit's determination in *Windows, Inc.* that "[s]ome courts take a broader approach and allow certain parties to sue even if they did not actually possess the bill of lading." *Celtic Int'l, LLC v. J.B. Hunt Transp., Inc.*, 234 F. Supp. 3d 1034, 1041 (E.D. Cal. 2017).

11

F.Supp. 229, 233 (E.D.N.Y.1998); *Banos v. Eckerd Corp.,* 997 F.Supp. 756, 762 (E.D. La. 1998)); *see Polesuk v. CBR Sys., Inc.*, No. 05 CV 8324, 2006 WL 2796789, at *11 (S.D.N.Y. Sept. 29, 2006) (finding "the Carmack Amendment does not limit the class of plaintiffs that may seek recovery thereunder to only shippers.[10]  Rather, such an action may be brought by any person entitled to recover under the receipt or bill of lading.") (citations omitted).  Similarly, courts in this Circuit have held that where a buyer is a "consignee" of a shipment, and is listed as such on the bill of lading, its claim against a carrier is governed by the Carmack Amendment.[11] *See Travelers Indem. Co. of Illinois v. Schneider Specialized Carriers, Inc.*, No. 04 CIV. 5307, 2005 WL 351106, at *6 (S.D.N.Y. Feb. 10, 2005); *DiPaolo Mach. Works, Ltd.*, 998 F. Supp. at 233.  Importantly, a consignee's claim against a carrier does not arise under the Carmack Amendment by virtue of the party's designation as a consignee, but rather by virtue of the rights of recovery established in the bill of lading.  *Travelers Indem. Co. of Illinois*, 2005 WL 351106,

---

[10]   In *Polesuk*, the court defined a shipper as "[o]ne who tenders goods to a carrier for transportation," concluding that an individual plaintiff qualified as a "shipper" for purposes of the Carmack Amendment.  *See* 2006 WL 2796789, at *11 (citing *Am. Home Assur. Co. v. ZIM JAMAICA*, 418 F. Supp. 2d 537, 538 n.1 (S.D.N.Y. 2006)).

[11]   Courts in this Circuit have consistently held that the Carmack Amendment does not govern the liability of brokers.  *See Commercial Union Ins. Co.*, 50 F. Supp. 2d at 257 ("The Carmack Amendment does not provide for the liability of brokers."); *Active Media Servs., Inc. v. CAC Am. Cargo Corp.*, No. 08-CV-6301, 2012 WL 4462031, at *3 (S.D.N.Y. Sept. 26, 2012) ("[C]ourts have repeatedly held that the Carmack Amendment does not apply to brokers.") (citing *Commercial Union Ins. Co.*, 50 F. Supp. 2d at 257); *JAS Forwarding (USA), Inc. v. Owens Truckmen, Inc.*, No. 17-CV-03589, 2017 WL 5054715, at *5 (E.D.N.Y. Nov. 1, 2017) (citing *Olympus Dairy USA Corp. v. Pavil Assocs., Inc.*, No. 12 CV 1897, 2013 WL 6493482, at *2 (E.D.N.Y. Dec. 6, 2013) ("The Carmack amendment imposes liability on carriers and freight forwarders but not on brokers, as those terms are defined by the statute, and thus it is critical to determine whether a defendant was acting as a carrier or freight forwarder, or as a broker, in relation to the particular shipment that was damaged.")).  These decisions do not, however, squarely address the applicability of Carmack to claims made *by* brokers against carriers.

12

at *6 ("[A] bill of lading determines the rights of the consignee.") (quoting *Mexican Light & Power Co. v. Texas Mexican Ry. Co.*, 331 U.S. 731, 733 (1947)).

Multiple courts from beyond the Second Circuit have also attempted to address the issue of carrier liability as to non-shipper brokers under Carmack. In *Exel, Inc. v. S. Refrigerated Transp., Inc.,* the Sixth Circuit opined that the congressional intent behind the Carmack Amendment was concerned exclusively with the shipper-carrier relationship, and "[n]othing in the Carmack Amendment suggests that Congress also intended to protect the broker-carrier relationship by granting brokers a direct right to sue under the statute." 807 F.3d 140, 148-49 (6th Cir. 2015)[12] (citations omitted). Similarly, several courts have stated that where a broker does not appear on the bill of lading and is not trying to recover pursuant to a contract formed by that document, but rather is suing under a theory of indemnity, its claims do not arise under the Carmack Amendment. *See Traffic Tech, Inc. v. Arts Transportation, Inc.*, No. 15 CV 8014, 2016 WL 1270496, at *3 (N.D. Ill. Apr. 1, 2016);[13] *Coyote Logistics, LLC v. All Way Transp., Inc.*, No. 16-CV-1816, 2016 WL 7212487, at *2 (N.D. Ill. Dec. 13, 2016); *see also Keystone Logistics, Inc. v. Struble Trucking LLC*, No. 14-CV-1938, 2014 WL 6750052, at *3 (N.D. Ind. Dec. 1, 2014) (finding "the Carmack Amendment preempts claims on bills of lading, but not claims on other agreements," and where a party "is seeking to recover on a contract which is not a bill of lading, the Carmack Amendment does not apply and there is no preemption"). However

---

[12] The court in *Exel* did find that where the broker is the assignee of the shipper's claim against the carrier under the bill of lading, the broker has standing to assert a claim under Carmack. *Id*. (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 672 F.3d 434, 439 (6th Cir. 2012) (stating that assignee stands in the shoes of the assignor and assumes the same rights, title, and interest possessed by the assignor)).

[13] The court in *Traffic Tech* also noted "[t]he reasoning that the broker is separate from the shipper and the carrier as well is also consistent with the caselaw indicating that a broker cannot be sued as a carrier under the Carmack Amendment." 2016 WL 1270496, at *3.

13

at least one court has determined that a subrogation of rights under a separate insurance contract is sufficient to give standing under Carmack to a non-shipper broker, even where that broker is not a party to the bill of lading. *See Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 965 (S.D. Ohio 2009).[14]

### 2. *Application to the Facts*

For purposes of Defendant's motion to dismiss, the Court determines that Plaintiff has alleged facts sufficient to establish that it is a "broker" as that term is defined by 49 U.S.C. § 13102.[15] *See* Compl. ¶¶ 2, 11. However, the key factor in determining whether a party has standing to sue under the Carmack Amendment is not the designation given the party, but rather its rights vis-à-vis the shipper and carrier. This position is consistent with the weight of the case law referenced above, including that of the Second Circuit, that in order to have standing to bring a claim for recovery against a carrier under Carmack, a party must – whether shipper, non-shipper broker, or other party – at a minimum be entitled to recover under a receipt or bill of

---

[14]  It is worth noting, however, that the shipper in *Great West* was a party to the bills of lading. As the district court for the Southern District of Ohio explained:

> Great West is subrogated to the rights of its insured, American Foods, due to its payment pursuant to its insurance policy. Therefore, whether Flandrich is liable to American Foods determines whether Great West can recover from Flandrich. . . . American Foods was the shipper whose cargo was lost, and Flandrich was the carrier. The Bills of Lading were issued to American Foods as representative of the cargo of meat for which Flandrich was entrusted. . . . American Foods is entitled to recover under the Bills of Lading for loss of the cargo of meat due to the actions of Flandrich, the carrier.

*Great W. Cas. Co.*, 605 F. Supp. 2d at 965 (citing *S. Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 342 (1982); *The Carlos F. Roses,* 177 U.S. 655, 665, 20 S. Ct. 803, 807, 44 L. Ed. 929 (1900)).

[15]  Similarly, it is alleged and conceded that Defendant is a "carrier" for purposes of the Carmack Amendment. *See* Compl. ¶ 4; *see generally* Def.'s Mem.

14

lading. *See Windows, Inc.*, 177 F.3d at 118; *Polesuk*, 2006 WL 2796789, at *11; *Travelers Indem. Co. of Illinois*, 2005 WL 351106, at *6; *DiPaolo Mach. Works, Ltd.*, 998 F. Supp. at 233; *Exel, Inc.*, 807 F.3d at 148-49. Likewise, that premise is consistent with the plain language of the statute. *See* 49 U.S.C. § 14706(a)(1).

Plaintiff's Complaint alleges that the cargo of electronics was tendered to Defendant, and/or Defendant's subcontractor and/or agent, CRST Specialized Transportation, Inc., d/b/a STIdelivers, in good order and condition, on or about December 18, 2015. Compl. ¶ 13. The relevant bill of lading is attached to the Complaint as Exhibit 1 and is referenced in detail in the Complaint beginning at ¶ 14. "[B]ills of lading are contracts between shippers and carriers that spell out the carrier's obligation to deliver specific goods to specific people or places." *Italverde Trading, Inc. v. Four Bills of Lading Numbered LRNNN 120950, LRNNN 122950, LRNN 123580, MSLNV 254064*, 485 F. Supp. 2d 187, 197 (E.D.N.Y. 2007) (quoting *Int'l Knitwear Co. v. M/V Zim Canada,* No. 92 Civ. 7508, 1994 WL 924203, at *3 (S.D.N.Y. Oct.6, 1994)). The instant bill of lading presents as a shipping contract between Defendant Arnoff and STIdelivers. *See* Compl, Ex. 1. A review of the bill of lading shows that "5 CRATES OF ELECTRONICS / SEMICONDUCTOR EQUIPMENT" were to be shipped from "Mattson Technology" in Fremont, California, to "Arnoff Moving & Stg" in Albany, New York, with Arnoff to be billed for the transport. *Id.* Accordingly, Defendant Arnoff appears to be the "consignee" under the bill of lading.[16]

Conspicuously absent from the bill of lading is a clear reference to Plaintiff or Plaintiff's customer, Global Foundries. Nor is it apparent what if any rights of recovery Plaintiff has under

---

[16] A consignee is "[t]he person named in a bill to whom or to whose order the bill promises delivery." BLACK'S LAW DICTIONARY (10th ed. 2014).

15

the bill. Additionally, the bill of lading was issued by a third party, STIdelivers, and it is not clear to what extent Plaintiff ever saw or approved of the terms of the bill. *See Total Quality Logistics, LLC v. Macktoon, Inc.*, No. 12-CV-620, 2014 WL 4426184, at *2 (S.D. Ohio Sept. 9, 2014) (finding that an attorneys' fees provision in a broker-carrier agreement was not precluded by Carmack where neither plaintiff nor defendant, but rather a third-party, issued the bill of lading, and there was no indication that plaintiff-broker ever saw the bill of lading or intended to be bound by it). For these reasons, there are insufficient facts before the Court to plausibly show that the minimum condition precedent for standing under the Carmack Amendment – that Plaintiff be "entitled to recover under the receipt or bill of lading" – has been satisfied.

Defendant argues that despite being a broker, Plaintiff "brings this action on its own behalf and as an agent and/or trustee on behalf of, and for the interest of, all parties who may be or become interested in the shipment," Compl. ¶ 29, and, as such, "alleges that [Plaintiff] is an assignee of its customer shipper's rights." Def.'s Reply at 2. This assertion invokes Carmack liability, the argument goes, and Carmack preemption of all Plaintiff's state law claims along with it. While this may be the case, the facts currently before the Court as to the contractual relationship between Plaintiff and Global Foundries are insufficient to draw such a conclusion. Moreover, the cases cited by Defendant in its reply memorandum to support this proposition are distinguishable on their facts from those alleged in the Complaint. For example, *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 672 F.3d 434 (6th Cir. 2012)) deals with copyright interests; *R.E.I. Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 2007 WL 854005 (S.D. Ill. Mar. 16, 2007) concerns a broker who has a right of recovery under the bill of lading; and *OneBeacon Ins. Co. v. Haas Indus., Inc.* 634 F.3d 1092 (9th Cir. 2011) deals with an insurer's rights of

16

subrogation.[17]  What's more, none of these cases sufficiently obviate or otherwise address the key omission of the Complaint, the presence of which would likely invoke Carmack liability and preemption -- Plaintiff's rights of recovery, if any, under the bill of lading.

The Court concludes, for purposes of Defendant's motion to dismiss, that an examination of the Complaint and the several documents either incorporated in it or integral to the allegations set forth in it, does not permit a legal determination as to the applicability of the Carmack Amendment at this juncture.  *See JAS Forwarding (USA), Inc.*, 2017 WL 5054715, at *6 (denying a motion to dismiss a Carmack Amendment claim where the Court could not determine as a matter of law whether the Carmack Amendment was applicable).  It may be that fact discovery will sufficiently illuminate the nature of the relationship between Plaintiff, Global Foundries, and the Defendant so that the Court is in a position to actually make a determination whether the Carmack Amendment to the Interstate Commerce Act is the correct and exclusive cause of action.[18]  However, in the absence of such facts, the Court can make no such determination.  *See id.* (remanding for further discovery "[g]iven the uncertainties concerning whether the Defendants were brokers or common carriers").  Therefore, the Court respectfully recommends to Judge Feuerstein that Defendant's motion to dismiss Plaintiff's claim for recovery under the Carmack Amendment (Count I) be DENIED, without prejudice.

---

[17]  At the motion to dismiss stage and in the absence of a factual record, Plaintiff's rights vis-à-vis its customer, Global Foundries, are unknown to the Court and outside the scope of this decision.

[18]  One document not included in any of the moving papers is Plaintiff's contract with Global Foundries.

### C. Preemption of State Law Claims

"Because this Court cannot determine as a matter of law that the Carmack Amendment is applicable here, the Court can likewise not rule as a matter of law that Plaintiff's breach of contract . . . claims are preempted by the Carmack Amendment." *JAS Forwarding (USA), Inc.*, 2017 WL 5054715, at *6; *see Brody v. Liffey Van Lines, Inc.*, No. 13 CIV. 5719, 2014 WL 2450807, at *7 (S.D.N.Y. May 29, 2014) ("[W]hether Carmack bars the assertion of state law claims against [Defendant] cannot be determined on the pleadings."). Moreover, as Plaintiff points out, Federal Rule of Civil Procedure 8 allows a plaintiff "to set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses." FED. R. CIV. P. 8(2); *see* Pl.'s Opp'n. at 5. As the Court is unable to determine that Plaintiff's state law claims are preempted by application of the Carmack Amendment, the Court respectfully recommends to Judge Feuerstein that Defendant's motion to dismiss Counts II – VI of Plaintiff's Complaint be DENIED, without prejudice.

### V. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Defendant's motion to dismiss be DENIED, without prejudice.

### VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be**

**directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

<div style="display:flex;justify-content:space-between;">
<div>Dated: Central Islip, New York<br>
       February 21, 2018</div>
<div>**SO ORDERED**.<br><br>
/s/ A. Kathleen Tomlinson<br>
A. KATHLEEN TOMLINSON<br>
U.S. Magistrate Judge</div>
</div>